# Chisholm, Appellant, *v.* Thompson.

*Appeals—Assignments of error—Evidence—Exceptions.*

1. In an equity case, assignments of error complaining of rulings on the evidence which fail to state where the testimony referred to can be found in the paper-book, and assignments complaining of findings which fail to specifically show that an exception was taken and pressed in the court below, or, if taken, to indicate how finally disposed of, are defective and will be dismissed.

*Equity—Bill to quiet title—Title—Boundaries—Deeds—Description—Monuments—Courses and distances.*

2. Upon a bill to quiet title, to fix the line between two adjoining pieces of real estate, and to restrain the defendant from constructing a building, where both parties claim through common grantors and where the dispute is over the ownership of a strip of ground partly covered by a partition wall between the buildings on the respective lots and running of that width the entire depth of the properties, and where the grant to the defendants was several years prior to that of the plaintiff, the former's property being described as "all that certain lot with the buildings thereon erected" and "having erected thereon a three-story brick store" and containing a given number of feet front sufficient to include the ground in dispute, and the latter's property being described without fixed dimensions as bounded on the west by the lot of the defendants; and where the facts show that, although the wall in its original state belonged at first to the house erected on the plaintiff's lot, for more than three-quarters of a century it had been used and treated as though belonging to the property of the defendants, a decree in favor of the defendants will not be disturbed.

3. The particular mention of a building in the description of a lot conveyed may constitute a monument which will include all the ground covered by such building and fix the lines of the land. While monuments capable of being identified must always control courses and distances, the measurements of the lines whose courses and distances are given should not be disregarded in determining the identity of the monuments claimed to be found with those referred to in the deed.

Argued May 8, 1911. Appeal, No. 245, Jan. T., 1910, by plaintiff, from decree of C. P. Fayette Co., Equity No. 552, on bill in equity in case of Daniel Chisholm v.

Josiah V. Thompson et al.    Before FELL, C. J., BROWN, MESTREZAT, POTTER and MOSCHZISKER, JJ.    Affirmed.

Bill to quiet title, to fix the line between two adjoining pieces of real estate, to restrain the defendants from constructing a building, and to ascertain and award damages.

· The bill averred that the defendants were about to erect a building the easterly wall of which would encroach upon the westerly side of the adjoining lot belonging to plaintiff. The defendants answered that the strip of land upon which the plaintiff claimed they were about to encroach belonged to them and not to the plaintiff.

The case was heard on bill and answer and the court below filed an opinion in which the principal material facts were found, and the respective contentions of the parties were stated, as follows:

"In the early part of the nineteenth century Isaac Beeson owned in fee simple, inter alia, a lot in the borough of Uniontown, Pa., situate in the block between what is now Beeson avenue and Morgantown street on the south side of and fronting about sixty-four feet five and one-half inches on Main street, extending back the same width, 150 feet to South street. The first improvement on the said lot was a two-story brick dwelling house, which extended from what has long been known as the Harah lot on the east, along Main street westwardly twenty-seven and fifteen one hundredths feet. The west end of this dwelling was a regular nine-inch brick wall, and from the square of the building up, was a triangular gable, highest in the center, sloping to the north and south with the pitch of an ordinary comb roof.

"About 1832, some years after the erection of the said dwelling, Mr. Beeson erected on a part of the said lot a partly one and a partly two-story brick building for a business block, including in part and extending from the west wall of the dwelling on the east side to the adjoining property on Main street on the west. At the eastern end of the business block it was so constructed that there was

a passage or small alleyway to the immediate west of the dwelling, which alley or passageway was open to about the height of the first story, and there was operated through it for many years a tramway for the transportation of merchandise, etc., from Main street to and from the warehouse in the rear.  At the top of the Main street end of this passage or alleyway an arch was constructed and above it the business block was extended eastwardly to and connected with the west wall of the dwelling.  The front or Main street wall of the business block was built flush or even with the front wall of the dwelling, and from the top of the passage or alleyway the construction was such that the brick were interlocked so that from the aforesaid arch up to the square of the dwelling the two front walls were so joined as now to appear and look like a single wall all built at the same time.  The business block extended southwardly beyond the south line of the dwelling at its southwest corner, and from that corner southwardly the east wall of the business block was built so as that its western side was even and flush with the western side of the west end wall of the dwelling and its eastern side was about nine inches east of the said west side of the west end wall of the dwelling, and it was built on the strip of land in dispute.

" From the aforesaid, it will be observed that at the time of the erection of the business block, that part of it immediately west of the dwelling had no east wall of its own separate from the west wall of the dwelling, from the top of the passage or alleyway to the top of the dwelling— the west wall of the dwelling serving for that purpose— but south of and beyond the south line of the dwelling the business block did have a separate and distinct east wall and standing upon the strip of land in dispute. About 1851 a third story was added to a part of the business block and its construction from the top of the old said west end wall of the dwelling it was just built above the gable, so that the east wall for that part of the third story of the business block was only the said west wall

of the dwelling extending upwards.  Eventually the tram-way in the passage or alleyway was abandoned and the opening bricked up by extending that part of the north and south walls of the business block eastwardly to the west end of the dwelling and thus taking the alleyway space into the east first floor room of the business block, and thereafter the west wall of the dwelling from the ground up was the east wall of the business block.  When the alleyway was closed and the walls extended the brick were not interlocked in the front and west wall of the dwelling as they had been from the top of the alleyway .to the top of the square of the dwelling when the business block was originally constructed, but left a broken joint and as a consequence it is not difficult to determine the original outline of the foundation and walls of the dwelling.

" Mr. Isaac Beeson or his lineal descendants owned the fee simple title to the entire lot during all the time of the construction of the said buildings and the making of the said and other changes.  In effect when the said changes were completed the two said buildings were really but one building, partly one, partly two and partly three stories high, part used for a dwelling and part for business pur-poses, so that the west wall of the dwelling and that part of the east wall of the business block were one and the same and was in fact nothing more nor less than what is termed a cross wall, up to the top of the dwelling.  If the entire structure be considered as two buildings this cross wall is just as much a part of one as of the other, as with-out it the dwelling has no west wall, and without it the business block has no east wall, at least the extent of the dwelling, and none at all if plaintiff's contentions prevail.

" By due process of law it so happened that in 1890 the fee simple title to the whole of said lot and improvement was vested in Miss Jennie B. Beeson and her sister, Mrs. Louisa Mathers, subject to the dower rights of their mother, Mrs. Amanda L. Beeson.  At and for some con-siderable time before the date last aforesaid R. F. Hop-wood, Esq., acted as agent for the sale of various pieces of

real estate for the said Jennie B. Beeson and her sister, and as such agent he negotiated with the representatives of the Uniontown Young Men's Christian Association, and at least one other party, for the sale of the western part of the said lot, which was proceeded in so that on September 10, 1890, a written agreement was concluded between the Beesons and a representative of the Y. M. C. A. for the sale and purchase of all that part of the said lot described as follows, viz.: 'All that certain lot of ground with the dwelling thereon erected, situate on the south side of Main street, Uniontown, Pa., bounded and described as follows: Beginning at corner of lot of C. Claggett's heirs and running thence eastwardly along Main street about thirty-eight feet to corner of the house lately used as a dwelling by said first parties, now used for offices; thence southwardly at right angles with Main street 150 feet to South street, thence westwardly along said street about thirty-eight feet to corner of Claggett lot aforesaid; thence northwardly by said lot 150 feet to Main street, the place of beginning. It being the property known as the Beeson store property, having erected thereon a three-story brick storehouse on Main street and a brick warehouse and stable on South street.' Which said agreement on August 12, 1907, was assigned by the proper authorities of the Y. M. C. A., with the approval of the court of common pleas of Fayette county at No. 185, September Term, 1907, to Josiah V. Thompson and John D. Ruby, and in pursuance thereof on December 12, 1907, the said Jennie B. Beeson et al. executed a deed for the said premises to the said Thompson and Ruby, subject to the dower interests of Mrs. Amanda L. Beeson, and at a later date the said Thompson and Ruby sold and agreed to convey the said premises to Lee Stern, Joseph Stern and Samuel Stern, the other defendants. On December 29, 1893, more than three years after the Y. M. C. A. had purchased and taken possession of the 'three-story storehouse,' the plaintiff herein purchased by articles of agreement the remainder

of said lot, described as follows, viz.: 'All that certain lot of ground situate on the south side of Main street in the borough of Uniontown, Fayette county, Pa., and running through from Main to South street, bounded on the east by lot of John S. Harah and on the west by lot of Y. M. C. A., being the same property heretofore used as a dwelling by said first parties, now occupied by offices of O. P. Markley et al.' Which article of agreement was followed by a general warranty deed dated April 2, 1894, recorded in the recorder's office of Fayette county, in Deed Book, vol. 128, p. 334, in which said deed the description is the same as that quoted above from agreement.

" The aforesaid facts developed the contentions between the parties to this action as to the ownership of the said cross wall, the entire east wall of the business block and the strip of ground about nine inches wide extending from Main street through to South street. It is contended on the part of the plaintiff that his agreement and conveyance called for and carried the entire 'property heretofore used as a dwelling' and all that part of the lot covered by it, and since the first two stories of the said west or cross wall were built as a part of the dwelling house his lot must of necessity extend to and include everything to the line that was the out and west side of the dwelling house when it was originally constructed, which was the east side of the aforesaid passage or alleyway when the business block was first completed, and he further claimed that the aforesaid purchase by the Y. M. C. A. was only to the corner of the said dwelling and did not include the east wall of the business block. The defendants contend that the contract for the sale to the Y. M. C. A. antedating that to the plaintiff, and 'it being the property known as the Beeson store property, having erected thereon a three-story brick storehouse on Main street' and the distance expressed, while it says 'about thirty-eight feet,' being within the fractional part of an inch to carry the strip of land in controversy to the Y. M. C. A.

and through it to the defendants, the said wall and strip of ground belonged to them. And in support of their contention the aforesaid R. F. Hopwood testified as representing the Beesons, to having made the actual measurement on the ground so as to include the said wall and strip of land in the sale to the Y. M. C. A. and that it was clearly and distinctly the purpose to sell to the Y. M. C. A. the three-story building, and there is other evidence to the same effect. And in addition there is evidence of a fence having once been maintained from the rear of the building toward South street on the line claimed by the defendants, indicating such division of the said lot by the Beesons years ago—which appeared by marks on the ground and by reference to plan No. 2 attached to defendants' answer. There is some conflict in the testimony regarding the agency of Mr. Hopwood but in our opinion none of a positively serious character, and we cannot conclude otherwise than as testified by Mr. Hopwood in that regard, and also as to measurements made by him on Main street, as, if it had not been the intention to include the wall and strip of ground in dispute in the Y. M. C. A. agreement, the measurement to the broken joint where the alleyway was walled up and the point to where it would then have extended, would have been a very simple matter and could easily have been determined exactly. If that had been the intention, Mr. Hopwood's measurement was off eight and one-fourth inches, whereas taking what we find the intention to have been, his measurement was correct to within three-eighths of one inch.

" In view of the foregoing and of the fact that at the date of the contract with the Y. M. C. A., the said Jennie B. Beeson and Louisa Mathers were the owners of the entire lot, we conclude and find as a fact that it was the purpose and intention of all parties in interest to sell and purchase the entire three-story brick building and the ground on which it and its necessary walls stood, and having concluded that the wall in controversy is a necessary part of

the business block or three-story building, the sale of the said three-story building included the said wall, and this being a fact, we find, conclude and hold as a fact that the title to the said wall and the nine-inch strip of ground passed from Jennie B. Beeson and Louisa Mathers when they sold the 'Beeson store property, having erected thereon a three-story brick store-house,' to the Y. M. C. A.

" There is no question but that on September 10, 1890, the date of the agreement with the Y. M. C. A., all the parties in interest were under the impression, so far as the matter was given consideration, that at the point in dispute there were two walls—one for the west end of the dwelling and one for the east end of the business block, instead of being merely a single cross wall. While we are satisfied and find as a fact that it was the intention to sell and purchase the whole three-story building by the agreement of September 10, 1890, yet we are equally well satisfied that it was not the intention to sell and purchase a wall that was supposed to be there as the west wall of the dwelling, yet we do not think that the absence of such wall could affect the sale to the Y. M. C. A."

On May 24, 1910, the court below dismissed plaintiff's exceptions and confirmed the decree previously entered refusing the injunction, fixing the line between the lots as contended for by the defendants, and dividing the costs between the parties. Plaintiff appealed.

*Errors assigned* were (1) finding of fact that Hopwood acted as agent for the Beesons in negotiating with the Y. M. C. A. for the lot subsequently deeded to the defendants; (2) admission of Hopwood's testimony showing how he made the measurements of the front of defendants' lot so as to include the wall in dispute; (3) admission of Hopwood's testimony to the effect that at the time of the conveyance to the plaintiff he had explained to him the prior conveyance to the defendants, that he had declined to permit his clients, the plaintiff's grantors, to make a deed to the plaintiff describing the property as

containing any defined frontage, and that this was done for the purpose of not expressly including the wall in such conveyance to the plaintiff; (4) finding of fact that the sale to the Y. M. C. A. passed the title of the strip of land and wall in dispute; (5) conclusion that monuments upon the ground designated by the parties sufficiently marked the measurements so as to include the strip of land in dispute in the property conveyed to the defendants; (6) conclusion of law that the principle "that where one of two or more innocent parties must suffer, the loss must be sustained by those who are most to blame" applied in this case in favor of the defendants; (7, 8) form of decree; (9) final order dismissing exceptions and confirming the decree.

*D. M. Hertzog*, with him *A. D. Boyd*, for appellant.— Parol testimony cannot be introduced to modify or explain descriptions embraced in deeds for real estate except in cases of latent ambiguity in the descriptions themselves, or fraud, accident or mistake: Shepherd v. Watson, 1 Watts, 35; Duffield v. Hue, 129 Pa. 94; Fuller v. Weaver, 175 Pa. 182; Hunter v. Hunter, 37 Pa. Superior Ct. 311; Root's Est., 187 Pa. 118; Henry v. Huff, 143 Pa. 548; Hughes v. Westmoreland Coal Co., 104 Pa. 207.

The fifth assignment is supported by Thompson v. Kauffelt, 110 Pa. 209; Breneiser v. Davis, 134 Pa. 1.

*W. J. Sturgis*, with him *E. H. Reppert* and *S. J. Morrow*, for appellees.—Appellant's counsel lay much stress on the wording of the contract of sale to the Y. M. C. A.  As Chisholm, the appellant, does not claim under this contract, it is not clear that it is a vital matter to him: Province v. Crow, 70 Pa. 199.

That parol evidence is competent in such a case is well established: Safe Deposit & Trust Co. v. Mfg. Co., 229 Pa. 295; Swartz v. Moore, 5 S. & R. 257; Carroll v. Miner, 1 Pa. Superior Ct. 439.

The mention of a building may constitute it a monument so as to carry the limits of the land conveyed by a

deed beyond the distance mentioned therein: White v. Williams, 48 N. Y. 344; Cecconi v. Rodden, 147 Mass. 164 (16 N. E. Repr. 749); Tyler v. Fickett, 73 Me. 410.

OPINION BY MR. JUSTICE MOSCHZISKER, October 9, 1911:

The manner in which the appellant's paper-book was prepared and printed has added greatly to the difficulty of review. Many pages of testimony are duplicated in such a way as to lead to confusion; connected and essential words are left out of the findings and several important exhibits are omitted. Scarcely any of the assignments of error conform to the equity rules or the rules of this court. Equity rules 64–67 provide that after the adjudication is filed exceptions may be taken in the court below, "which exceptions shall cover all objections to rulings on evidence, to findings of fact or law or to the decree;" and if no such exceptions are filed, "all objections shall be deemed to be waived." If exceptions are filed, they must be heard and passed upon by the court below "as upon a rule for new trial," and "upon appeal to the Supreme or Superior Court such matters only as have been so excepted to and finally passed upon . . . . shall be assignable for error:" New Cumberland Borough v. Riverton Cons. Water Co., 232 Pa. 525. Court rule 29 provides that "each error relied upon must be specified particularly and by itself," and rule 31 provides that when the error assigned is to the admission or rejection of evidence, the specification must give "a reference to the page of the paper-book where the matter may be found in its regular order in the printed evidence," and "any assignment of error not according to this rule will be disregarded:" Kaufman et al. v. National Lumber Ins. Co., 000 Pa. 000. Each of the specifications of error, except the ninth, in some way offends against these rules, in that it fails to state where the testimony referred to can be found in the paper-book, or specifically to show that an exception was taken and pressed in the court below, or, if taken, to indicate how finally disposed of.

While we will not pass separately upon each of these faulty assignments, we have examined the matters covered by all of them and are not convinced that the decree of the court below should be disturbed. The deed to the plaintiff was made more than three years after the sale of the defendant's property to the Y. M. C. A., and the grantors used especial care in describing the property conveyed to the plaintiff so as not expressly to include the wall in dispute. The frontage is not stated in the description and no dimensions are given, the lot simply being mentioned as "bounded on the . . . . west by lot of Young Men's Christian Association." The plaintiff now contends that the property so described included the wall claimed by the defendants as embraced in the conveyance to the Y. M. C. A. The description in the deed to the latter was, "All that certain lot . . . . with the buildings thereon erected . . . . beginning at the corner of the lot of C. Claggett's heirs and running thence eastwardly along Main street about thirty-eight feet to the corner of the house lately used as a dwelling . . . . , being the property known as the Beeson store property, having erected thereon a three-story brick store on Main street. . . ." The testimony shows that the dwelling house referred to was originally erected upon the premises of the plaintiff in or about the year 1824, two stories in height; that a building was erected on the adjoining lot, now belonging to the defendants, in about 1832, and that the wall in dispute from that time on was used in common; that about 1852 the wall was run up one additional story in order to place a third floor upon the defendants' property; and that about 1872 a one-story structure was added in the rear of the defendants' three-story building, the wall in question being extended for that purpose. Thus it appears that for almost three-quarters of a century the wall was used and treated as though it belonged to the premises now possessed by the defendants rather than to the adjoining dwelling house, and the frontage of thirty-eight feet in the defendants' deed is sufficient to embrace it,

within the fraction of an inch.    The court was not bound
to ignore all of these circumstances and to construe the
deed of the defendants as excluding, and that of the plain-
tiff as including, the ground covered by the wall.

No question of jurisdiction was raised in the court be-
low or on this appeal.    As the case was tried, its determi-
nation was made to depend upon the construction to be
placed upon the description of the defendants' property,
the strip of ground occupied by the wall and running of
that width to the rear line of the property being the
subject-matter in controversy.    The plaintiff's title and
that of the defendants came from the same common grant-
ors, and neither conveyance specifically referred to the
wall; the question was, which of them included it.    If the
prior conveyance under which the defendants claimed, in-
cluded the wall, of course the later one to the plaintiff did
not.    Had the description in the former conveyance plainly
excluded the wall, then no outside evidence could have
been considered; but as the wall was not mentioned, we
are not prepared to hold that the court below was bound
to construe the words "to the corner of the house lately
used as a dwelling," which occur in such description, as
excluding it.    A description, "running to the corner of a
property," ordinarily would mean to the outside wall
of the premises referred to; but if the property did not
happen to have an outside wall, such description could
not be taken to intend that which was not there.    The
court below has found that the premises in question did
not have such a wall, but on the contrary that the only
one in existence at that point had been treated as belonging
to the lot conveyed to the Y. M. C. A and subsequently
deeded to the defendants.    This property was described
as a lot "with the buildings thereon erected . . . . a
three-story brick store-house."    The mention of a build-
ing may constitute a monument (White v. Williams, 48
N. Y. 334; Carroll v. Miner, 1 Pa. Superior Ct. 439), and
we cannot say that the mention of the building in question
could not be taken as constituting a monument which

would include all of the ground covered by the structure and indicate the lines of the land.

At the time of the Y. M. C. A.'s purchase the common vendors owned both properties, and they could have conveyed according to any line they might have chosen: Breneiser v. Davis, 134 Pa. 1. It is more reasonable to believe that they retained a building without a west wall than that they sold one with no east wall. The expressed dimensions of the lot conveyed and the specific mention of the building in the description of the defendants' property could well be construed as including the wall, unless the reference to the corner of the adjoining property plainly indicated otherwise; and what was meant by this reference was in dispute. "The identity of a monument existing on the face of the earth with one referred to in a deed is always a question of fact" and "While monuments capable of being identified must always control courses and distances, the measurements of the lines whose courses and distances are given should not be disregarded in determining the identity of the monuments claimed to be found with those referred to in the deed:" Tyler v. Fickett, 73 Me. 410.

Under the circumstances, we are not satisfied that the chancellor committed error by considering the surrounding facts in determining the ownership of the wall and strip of land in question (Safe Deposit & Trust Co. v. Mfg. Co., 229 Pa. 295), and while we do not agree with the learned court below as to the applicability of some of the principles of law relied upon, we are not convinced of error in the conclusion reached.

The first eight specifications are dismissed, the last is overruled, and the decree is affirmed; the appellant to pay the costs of this appeal.