# Berg, Appellant, *v.* Butler Savings & Trust Company.

*Equity—Findings of fact—Decree—Easements—Adverse possession.*

1. In a proceeding in equity to restrain the obstruction of an alley-way in which plaintiffs claimed an easement and to recover damages for alleged injuries to their property, a decree dismissing the bill will not be reversed where there is support for the court's findings and conclusions that the defendant and his predecessors in title had used and occupied the narrow strip in controversy so as to obtain title thereto by adverse possession, except that during part of the statutory time the water conductors on the plaintiffs' building had overhung the alley eight or nine inches; that under the facts the use of the land as an easement by the plaintiffs was presumed to have been permissive; that the proposed construction would not interfere with the overhanging portions of plaintiffs' building; and that since the defendant before excavating below the foundations of the plaintiffs' building had notified the latter to protect the same, which they had undertaken to do; and since no negligence had been proved against the defendant, the plaintiffs were not entitled to recover damages.

*Rules—Supreme Court—Specifications of error.*

2. A specification of error which goes to the decree and complains of the refusal of an injunction, the failure to assess damages and the dismissal of the plaintiffs' exceptions offends against Supreme Court rule 26, to the effect that each error relied upon must be specified by itself and that no specifications shall embrace more than one point, refer to more than one bill of exceptions or raise more than one distinct question.

Argued Oct. 11, 1911.   Appeal, No. 153, Oct. T., 1911,, by plaintiffs, from decree of C. P. Butler Co., June T., 1910, No. 4, in Equity, dismissing bill in suit of Mary E. Berg et al. v. The Butler Savings & Trust Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ.   Affirmed.

Bill in equity to restrain the obstruction of an alley-way, and for damages.   Before GALBREATH, P. J.

The facts appear by the opinion of the Supreme Court.

*Error assigned* among others was the decree of the court.

*H. H. Goucher,* with him *F. J. Forquer, Murrin & Murrin* and *Stephen Cummings,* for appellant.

*T. C. Campbell,* with him *W. D. Brandon* and *J. C. Brandon,* for appellee.

OPINION BY MR. JUSTICE MOSCHZISKER, January 2, 1912:

This was a proceeding in equity to restrain the obstruction of an alleyway in which the plaintiffs averred an easement, and to recover damages for alleged injuries to their property from the construction of a building upon the adjoining land of the defendant.

The plaintiffs' property is situated in the borough of Butler at the southwest corner of High and Jefferson streets, containing forty feet in width on High street and extending eighty feet to the westward along Jefferson street. The defendant's lot has the shape of an inverted "L," the long arm of which bounds the plaintiffs' property on the south and the short arm on the west. This lot can best be described as follows: Beginning at a point on the west side of High street forty feet south of Jefferson street, thence extending westward along a line at right angles to High street eighty feet to a point, thence northward along a line at right angles to the last mentioned line, forty feet to the south side of Jefferson street, thence westward along the said Jefferson street twenty-five feet to a point, thence southward along a line at right angles to Jefferson street sixty feet to a point, thence eastward along a line at right angles to the last mentioned line 105 feet to High street, and thence northward along the west line of High street twenty feet to the place of beginning. The plaintiffs claimed that a strip of the last described lot five feet in width, bounding their property on the west, constituted "a narrow alley or court," running into Jefferson street, in which they had an easement.

It appears from the findings of the court below that one McKee conveyed a block of land embracing, inter alia, both the properties in question to John M. Thompson; that the latter subdivided this large piece of land and made the following conveyances: (1) by deed dated November 11, 1871, to the defendant trust company, a lot on the west side of High street forty feet from Jefferson street, containing twenty feet in front and seventy-five feet in depth (being part of the defendant's present property); (2) by deed dated January 3, 1872, to one Duffy, a lot beginning at the corner of High and Jefferson streets, thence south along High street forty feet to a post, thence west eighty feet to "a narrow alley or court," thence by said alley to Jefferson street, and thence along said Jefferson street east eighty feet to the place of beginning (being the property of the plaintiffs); (3) by deed dated April 4, 1872, to one Pillow, a lot twenty feet in width immediately to the west of and adjoining the short arm of the "L" shaped lot of the defendant, described and referred to as "immediately west and adjoining John Kopp's lot . . . . the northeast corner of said lot herein conveyed being 105 feet from Main street;" that the various deeds in the line of title between Duffy and the plaintiffs make reference to "a narrow alley or court" in practically the same words contained in the deed to Duffy; that no deed of record or other conveyance from Thompson to John Kopp was produced for any portion of the piece of ground lying between the lot conveyed by deed "3" and those conveyed by deeds "1" and "2," which piece of ground constitutes the balance of the defendant's lot in excess of the part conveyed by deed "1" above referred to; that the entire "Kopp" lot was claimed by defendant company under a sheriff's deed made to one Lawall, dated January 15, 1878, it being therein described as "All the right, title, interest and claim of John Kopp of, in and to a lot of ground 20 by 60 feet, more or less, . . . . bounded on the north by east Jefferson street, east by National Bank building, south by Francis Baldauf and west by

Henry Pillow; a large two-story frame house thereon," and under a deed from the heirs of Lawall in which the description is practically the same; that in 1872 a three-story brick building covering the entire lot was erected on the property of plaintiffs, the said building having nine windows in the rear or west end thereof and three openings in the basement, together with a six-inch water conductor from the roof to the ground, connecting with a sewer leading from the defendant's building through the "narrow alley or court" to Jefferson street; that in 1872 or 1873 there was erected on the Kopp lot a frame building twenty feet in width, leaving to the east thereof a strip of land; that this strip "designated in the deeds of convey-ance to the plaintiffs and their predecessors . . . . as a narrow alley or court . . . . was apparent on the ground and used by the plaintiffs and their predecessors in title for the purpose of obtaining light and air in the rooms in the west end of said building, conducting water from the roof and sewerage, from the date said building was con-structed in 1872 down to a short time before the filing of this bill, when the defendant company entered thereon and commenced excavating for the purpose of erecting a building on said lot;" that the defendant has placed a stone foundation wall in said "alley or court" and has threatened to obstruct it with a building; that for a great part of the time between 1871 and the date of the filing of the bill a gate was erected and maintained across the so-called "narrow alley or court" by the owners and occupiers of the Kopp property (predecessors in title to the defend-ant), "which gate was erected at the entrance on Jeffer-son street, and from time to time the gate was kept locked by the defendant or by its predecessors in title;" that as early as the time of John Kopp (1865 or 1866) the ground constituting this narrow "alley or court" was used for the storage of marble by said Kopp in connection with a marble shop which he maintained on his lot; that the plaintiffs received due and ample notice from the de-fendant to underpin and protect their west wall and to

disconnect their building from the sewer in said "alley or court,"—the former of which they endeavored to do and the latter of which they did; that "the plaintiffs have not shown negligence by the defendant in excavating for its building;" and that "there is no evidence in this case which would establish a claim by prescription in the plaintiffs to any land west of . . . . plaintiffs' land. . . ."

The court below in its opinion states: "We do not know whether Thompson conveyed to the defendant's predecessors in title the twenty-five feet between the Berg (plaintiffs) and the Pillow lot or not, or whether said deed antedated the deed to the predecessor in title of the plaintiffs' land. But John Kopp was occupying the twenty-five feet of land when Thompson conveyed the land of the plaintiffs to their predecessor in title, Charles Duffy. If this land of defendant's was conveyed by Thompson to Kopp before he conveyed the plaintiffs' land to Charles Duffy, and the conveyance called for the twenty-five feet, then the boundary of the Duffy land on the west by a narrow alley or court would not deprive Kopp of his title in this five-feet strip of land along the Duffy line. But we do not know how the land conveyed by Thompson to Kopp was described in the deed, but when in 1878 the sheriff sold it as the land of Kopp, the deed, as well as subsequent deeds, described it as being bounded on the east by the bank lot. The evidence does show, however, that John Kopp and his successors in title had used and occupied this narrow strip of land so as to obtain title thereto by adverse possession, except that during all the time since the erection of the present building upon the plaintiffs' land, in about 1873, the water conductors on the building have overhung the alley eight or nine inches. . . . The title of the defendant in this case rests upon the statute of limitations, being held by the defendant under the possession of John Kopp. That possession, which includes what is called the alley west of the property of plaintiffs, dates back to a time anterior to the date of the inception of the title of John M. Thompson through whom plaintiffs claim title. It is pre-

sumed at this date that John Kopp, when he first went into possession, did so under a proper conveyance from the then owner of the property, and this is not shown to have been subject to said alley. Under these circumstances, the plaintiffs have no claim to the ground covered by the alleged alley unless they have acquired the same by adverse user. . . . Under the facts in this case the use of the land involved as an easement by the plaintiffs or their predecessors in the title is presumed to have been permissive and not adverse." The court below concluded that the defendant had title to all the land in controversy; that the plaintiffs had no easement that would prevent the defendant from constructing its proposed building; that the construction of the building would not interfere with an overhanging cornice on the building of the plaintiffs; that since the defendant before excavating below the foundations of the plaintiffs' building had notified the latter to protect the same, which they had undertaken to do, and since no negligence had been proved against the defendant, the plaintiffs were not entitled to recover damages; and that the bill should be dismissed. A decree was entered accordingly.

Forty of the specifications are faulty in failing to show that they raise matters excepted to and finally passed upon by the court below: New Cumberland Boro. v. Riverton Cons. Water Co., 232 Pa. 531; Chisholm v. Thompson, 233 Pa. 181. The remaining specification goes to the decree, and complains of the refusal of the injunction, the failure to assess damages, and the dismissal of the plaintiffs' exceptions. This assignment offends against rule 26 to the effect that each error relied upon must be specified by itself and that no specification shall embrace more than one point, refer to more than one bill of exceptions, or raise more than one distinct question. While we will not undertake to treat each one of these defective specifications separately, in our investigations and researches we have considered all the matters which they were intended to call to our attention, and we are

not convinced of any reversible error; another mind might have drawn other inferences and determined some of the points involved differently, but there is support for all of the positions taken by the court below. It would have been better had the trial judge made separate and distinct findings of the essential facts upon which he based his determination that the defendant had title by adverse possession to the ground in controversy and that the use made thereof by the plaintiffs was permissive, but after reading all the testimony and considering the documentary evidence we cannot say that there were no sufficient proofs to sustain these conclusions.

The assignments of error are all dismissed and the decree of the court below is affirmed at the cost of the appellant.