FLINT, JOHNSON & CO. v. EUREKA MARBLE CO.

*Book Account. Partnership.*

The defendant was the owner of an undeveloped marble quarry; the plaintiffs were its principal stockholders. By force of a lease and contract entered into by the one and parties represented by the other, the defendant was to quarry, deliver on the cars, and pay one half the expense for removing the marble to the plaintiffs' mill. The plaintiffs were to build a mill, manufacture the marble, sell it, collect, and divide the avails equally. The defendant's credit became poor; and the plaintiffs had to indorse its paper and guarantee the payment to the laborers in order to continue the business. The defendants never *specially requested* them to indorse, &c.; but knew of it, and took the benefit thereof. *Held*,

1. It was not a partnership, as there was no *community of profit* and loss. By the contract one might *gain* and the other *lose*.
2. The plaintiffs can recover in an action of book account *all moneys actually paid because of such indorsements*, &c., *up to the hearing* before the auditor; but not on the *indorsements where they have not paid*.
3. That the defendant knew that the plaintiffs indorsed its paper, and *acquiesced in it*, is evidence from which the auditor might legitimately find the indorsements to have been made *by the request* of the defendants.
4. As the plaintiffs owned a controlling interest in the defendant company if the *fairness* of the contract were attacked, the court would carefully scrutinize its provisions, and if found to have worked injuriously, and to have been made without the knowledge of the other stockholders, would ordinarily refuse to enforce its unjust provisions.

CASE heard at the March Term, 1880. Action, book account. Judgment, *pro forma*, was rendered upon the report of an audi-

tor for the plaintiff to recover the sum of $16,833.63. The exceptions were allowed and certified by the first assistant county judge, HOSEA B. BALLOU, presiding, as the judge of the Supreme Court, holding this term, was disqualified by reason of having been of counsel. The auditor found, among other things, as follows:

The Eureka Marble Company was incorporated in 1866, and organized soon afterward. The company purchased a marble quarry in Rutland, where they have done their business since 1867. On the 17th day of February, 1871, said corporation contracted to lease their quarry and lands connected with it to George Hart of Boston, Mass., J. G. Flint of Milwaukee, Wis., William H. Johnson and George H. Babbitt of Bellows Falls. And at the same time entered into a contract in writing, by the terms of which the Eureka Marble Company was to furnish blocks of marble from their quarry to said Hart, Flint, Johnson and Babbitt; and they were to saw the same, market the marble, and after deducting the expenses of collecting, pay to the Eureka Marble Company one half of the proceeds of such collections.

In April, 1871, the co-partnership of Flints, Johnson & Co., was formed, the members of whom were said George Hart and J. G. Flint, Wyman Flint, William H. Johnson and George H. Babbitt. All these partners were stockholders in said Eureka Marble Company, the Flints owning one hundred shares, Johnson and Babbitt fifty shares, Hart owned and held as collateral and controlled something over fifty shares. The number of shares of said company was four hundred. . . . . . .

No special request was ever made by the Eureka Marble Company to Flints, Johnson & Co., for the indorsement of its paper or for the payment of the indebtedness of the corporation or the furnishing of the materials charged in their specification. The business was all done and controlled by said co-partnerships. But I find that said corporation understood and knew the manner in which the business was conducted, and never objected to the action of the co-partnership. If, from the acquiescence of the corporation in the indorsement of its paper and payment of the same, the employment and payment of the workmen upon the quarry, and the furnishing the materials charged in the specification, I am at liberty to infer a request on the part of the corporation to the co-partnership to do so, then I find such request; but from no other evidence in the case.

*Davenport & Eddy*, for the plaintiffs.

Book account will lie. *Sergeant* v. *Pettibone*, 1 Aik. 355; *Wilkins* v. *Stevens*, 8 Vt. 214; *Warden* v. *Johnson*, 11 Vt. 455; *Chellis* v. *Woods*, Ib. 466; *Weller* v. *McCarty*, 16 Vt. 98; *Gassett* v. *Andover*, 21 Vt. 342. It was the duty of the auditor to do as he has done—adjust all the items of account due and payable at the time of the audit, and strike the balance as he finds it. *Ambler* v. *Bradley*, 6 Vt. 119; *Pratt* v. *Gallup*, 7 Vt. 344; *Martin* v. *Fairbanks*, 7 Vt. 97; *Wetherell* v. *Everts*, 17 Vt. 219; *Chaffee* v. *Malarkee*, 26 Vt. 242.

In the absence of fraud and bad faith, contracts thus entered into between a corporation, and some one or more of its members, are binding to the same extent as if made with outside parties. Angell & Ames on Corp. s. 233; *Turnpike Co.* v. *Willard*, 5 Mass. 85; *Gilmore* v. *Pope*, Ib. 491; *Canal Co.* v. *Gordon*, 1 Pick. 297; *Rivers* v. *Copper Co.* 15 Pick. 351; *Rogers* v. *Danby U. Society*, 19 Vt. 187.

*Prout & Walker* and *W. H. Smith*, for the defendant.

All the dealings between these parties were co-partnership business, and grew out of their joint relation. And the defendants urge that the action of book account is not the appropriate remedy for the settlement of such claims. *Hydeville Co.* v. *Barnes*, 37 Vt. 588; *Huxley* v. *Carman*, 46 Vt. 462; 10 Vt. 314; 22 Vt. 181; 27 Vt. 286; 29 Vt. 1; 31 Vt. 395. The plaintiffs " assumed the lease and contract " and " undertook to carry out the same." Some one of the plaintiffs *signed the notes* with *defendant's name*, and *indorsed* them with plaintiffs' name. Plaintiffs kept the books of both parties *all in one.*

As the case finds, the defendant *never requested* the plaintiffs to indorse its paper or pay any of the debts which plaintiffs seek to charge upon defendant in this action. The defendant knew how the business was being done and made no objection, as the case finds. *Who was there to object? Personally* the defendants are all plaintiffs here. How could the defendant object, as plaintiffs controlled the corporation. The case furnishes no ground for *inference* of a request on the part of the defendant, or for an

" *acquiescence* " on its part. The plaintiffs were *all in all* on both sides. Defendant insists that all the doings of the plaintiffs in their whole business, including the indorsing the paper of defendants and their payments, as claimed in their account, were purely voluntary, and constituted no claims that can be enforced in this action. In no event can the Lynch claim be allowed.

The opinion of the court was delivered by

Ross, J. The defendant was the owner of an undeveloped marble quarry in Rutland. The plaintiffs were its principal stockholders, owning and controlling a majority of the capital stock. February 17, 1871, the defendant leased to parties who are represented in this suit by the plaintiffs, a portion of its property whereon they agreed to erect a mill for sawing and manufacturing the marble of the defendant, and by a contract between the parties to the lease contemporaneously executed, and which formed a part of the same transaction, the defendant contracted to furnish the other party marble from its quarry sufficient to stock the mill for a term of ten years, and the other party agreed to manufacture the marble thus furnished, sell, and collect the pay therefor without expense to the defendant. The avails of the sales of the marble thus manufactured and marketed, it was agreed should be divided equally between the parties. The contract evidenced by the lease and cotemporaneous written agreement, was previously authorized by the defendant. The fairness and justness of this contract has not been attacked. Because the plaintiffs owned the controlling interest in the stock of the defendant, and were most of them officers as well as stockholders, and so stood in a *quasi* trust relation to the other stockholders of the defendant, if the fairness and good faith of the contract were attacked, the court would carefully scrutinize its provisions, and, if found to operate to the prejudice of, and to have been made without the knowledge or acquiescence of the other stockholders, would ordinarily refuse to enforce its unjust provisions against the defendant even. But no such question arises on the facts found by the referee.

The first question made by the defendant is, that the plaintiffs and defendant were partners in the manufacture of the marble,

and if not partners, their contract relations were such that the plaintiff cannot maintain this action of book account to settle the matters in issue. By the contract the defendant was to quarry and furnish the marble on the cars, and pay one half the expense of running it to the plaintiffs' mill. The plaintiffs were to be at one half the expense of running the marble to the mill on the cars, to manufacture and sell the marble thus furnished, and collect the pay for the same. What was thus collected was to be divided equally between them. From this statement it is apparent, that whether from a performance of the contract the plaintiffs realized a profit or sustained a loss, depended upon whether the expenses of manufacturing, selling and collecting the pay for the marble furnished by the defendant, were less or greater than one half the sum collected from the sales; and whether the defendant's performance of the contract resulted in a profit or loss to it, depended upon whether the cost of quarrying the marble, conveying it to and loading it upon the cars, together with one half the car fare to the plaintiffs' mill was less or greater, than one half the amount realized from the sales. The defendant might realize a profit while the plaintiffs sustained a loss from the performance of the contract, and conversely. There was no community of profit and loss growing out of the performance of the contract existing between the parties, and therefore no partnership. Neither were the parties jointly interested in, or liable for the performance of the same provisions of the contract, except the single provision that they were to share equally the amounts collected from the sales of the manufactured marble. It was not in any sense a joint contract, by which they became joint debtors or joint creditors to any third parties, nor in any such sense that would prevent the maintenance of an action of book account. The collections made by the plaintiffs from the sales of the manufactured marble were to be credited one half to the defendant, and the other half they had a right to take and use as their own. Immediately upon the receipt of any money by the plaintiffs from such collections, the right accrued to the defendant to charge one half of the same to them upon book. If in the deal between the plaintiffs and the defendant, the plaintiffs paid out any money or did any work for the

43

defendant, the right thereupon accrued to them to charge the same
to the defendant upon book.   The auditor has reported that the
charges for  which he has allowed the plaintiffs were for moneys
paid on notes of the defendant which they had indorsed, and on
claims to laborers for  services in quarrying the marble, the pay-
ment of which the plaintiffs had guaranteed.   If the indorsements
and  guaranties were made at  the request of the defendant, the
payments of money thereon by the plaintiffs, would be to the use
and benefit of the defendant, and gave them the right to charge
the same to the defendant upon book.   The auditor has found that
the indorsements and guaranties were made at the request of the
defendant, if its knowledge of and acquiescence in their doing so
was evidence from which such a request can legitimately be found.
Considerable importance has justly been given to acquiescence in
binding corporations, which are but legal entities acting through
agents, and without personal existence.   Knowing of the indorse-
ments and guaranties by the plaintiffs, and then taking the bene-
fits thereof, amount to a ratification thereof by the defendant, if
such indorsements and guaranties were originally unauthorized.
We entertain no doubt that the evidence had a legitimate ten-
dency to establish the fact found therefrom by the auditor.   But
the right to charge for money paid on such indorsements and guar-
anties, did not arise at the time they were made by the plaintiffs ;
but at the time they paid the money thereon for the defendant.
Until the payment of the money, the plaintiffs' obligation to pay
was collateral to that of the defendant.   If the defendant dis-
charged its obligation by paying the claims indorsed or guaran-
tied, no right to charge or of action would ever accrue to the
plaintiffs.   In this action, unlike ordinary actions, all matters for
which a charge upon book can properly be made before the
time of the hearing before the auditor, are to be settled, though
they accrued after the commencement of the suit.   From the
auditor's report we do not understand that he has included any
items in his allowances which did not accrue before the time
of the hearing, excepting the unpaid balance of the claim to
Thomas Lynch.   So much of that claim as the plaintiffs had not
paid at the time of hearing they had no right to charge for, and

no right to recover for in this action.   Nor do we understand that the auditor has included any claims which may have accrued to Flint Brothers, but only such as have accrued to these plaintiffs.

The result is, the judgment of the County Court is reversed, and judgment is rendered for the plaintiffs for the amount reported, less the unpaid balance of the Thomas Lynch claim.