# Mahlon C. Mercur v. The State Line and Sullivan Railroad Company (Appellant), George C. Jackson and Bernice W. Jackson, Executors of George D. Jackson, Deceased, B. Rush Jackson and James Thompson, Surviving Executors of Josiah Jackson, Deceased, Emily L. Patrick and H. W. Patrick, her Husband, and Bernice W. Jackson (Appellant).

*Tenants in common—Mines and mining—Royalties—Act of April 25, 1850.*

Where one of three tenants in common of coal sells his interest in the coal at a certain royalty to a company which proceeds to operate the land, the royalty fixed by the agreement to sell will not bind other tenants in common who were not parties to the agreement. As to them, the royalty that ought to be paid is an open question to be settled either by agreement or by a court of equity under the act of April 25, 1850, P. L. 573.

*Equity—Master's finding of facts—Review—Act of April 25, 1850.*

On a bill in equity under the act of April 25, 1850, P. L. 573, to ascertain the quantity and value of coal removed by one of several tenants in common, a master's finding of the value of the coal, on competent evidence, when confirmed by the court below, will not be reversed by the Supreme Court except in case of manifest error.

*Tenants in common—Coal—Royalties—Interlocutory order—Equity—Act of April 25, 1850.*

On a bill in equity filed under the act of April 25, 1850, P. L. 573, to ascertain the quantity and value of coal mined by one of several tenants in common, an order dissolving a preliminary injunction and permitting the cotenant to continue mining, on condition that an account should be kept of the coal mined, and that there should be paid into the hands of a receiver a royalty of a certain amount per ton, is an interlocutory order, and subject to such modification as to the rate of the royalties as the testimony may seem to require upon final hearing.

*Equity—Conveyance in fraud of creditors—Master's report.*

Where a master finds upon competent evidence that a sale and conveyance of land by a brother to a sister for a sufficient consideration was made in good faith, and not to defraud creditors; and the master's report is confirmed by the court below, the Supreme Court, in the absence of manifest error, will not reverse the decree at the instance of a judgment creditor of the brother who had obtained a judgment after the sale and conveyance, and bought in the property at a sheriff's sale under his judgment.

Argued March 21, 1895. Appeal, No. 417, by Bernice W. Jackson, one of the defendants, and Appeal No. 418, Jan. T., 1894, by The State Line and Sullivan Railroad Company, another defendant, from decree of C. P. Sullivan Co., Feb. T., 1882, No. 1, on bill in equity. Before STERRETT, C. J., GREEN, WILLIAMS, McCULLOM and FELL, JJ. Affirmed.

Bill in equity to ascertain the quantity and value of coal mined by one of several tenants in common. Before SITTSER, J.

From the record it appeared that George D. Jackson died on November 23, 1879, seized of the legal title of about 102 acres of land in Cherry township.

Josiah S. Jackson, with his two sons, the said George D. Jackson and B. Rush Jackson, did business up to the death of Josiah Jackson as Jackson & Sons in Sullivan county. While so engaged in business, the legal title to the above tract of land became vested in the said George D. Jackson. After his death his executors claimed the land as a part of his estate ; and on the other hand, it was claimed by the executors of Josiah Jackson, deceased, and by B. Rush Jackson, that the legal title was held subject to a trust; one third thereof for the said Josiah Jackson, and one third for B. Rush Jackson.

After the death of Josiah Jackson, George D. Jackson and B. Rush Jackson carried on business as Jackson Bros. in said county.

At the time of the death of George D. Jackson the firm of Jackson Bros. was insolvent, although the members of the firm were not. The firm was also insolvent on the 17th day of September, 1880, on which last mentioned date B. Rush Jackson conveyed his undivided one third interest in the land for the recited consideration of $5,000 (the actual consideration being $1,000), to his sister Emily L. Patrick, wife of H. W. Patrick.

To settle the disputed claims to the title of the land among these three parties, and to determine the question of the alleged trust, a bill in equity was filed by the executors of Josiah Jackson, deceased, and Emily L. Patrick, against the executors of George D. Jackson, deceased, resulting in a decree in favor of the plaintiffs, and a conveyance by the defendants on the 10th day of May, 1887, of the one undivided third of said land to Emily L. Patrick, and another third to the executors of Josiah Jackson, deceased.

By virtue of the power in the will of George D. Jackson, deceased, his executors conveyed one eighteenth part of said land to Mahlon C. Mercur and five eighteenths to The State Line and Sullivan Railroad Company, on the 19th of October, 1881, in consideration of the payment of the rate of ten cents per ton for each ton of clean coal mined from said tract. The railroad company then began to mine the coal.

In October, 1881, Bernice W. Jackson recovered judgment against B. Rush Jackson and subsequently, at a sheriff's sale under said judgment, bought the interest of B. Rush Jackson in said land.

On December, 1881, the bill in this case was filed and a preliminary injunction awarded against The State Line and Sullivan Railroad Co., restraining them from further mining coal in the land. Subsequently the preliminary injunction was dissolved on the following conditions : " The State Line and Sullivan Railroad Company shall keep an accurate account of all the coal mined and taken hereafter, and account for the same to, and pay into the hands of, a receiver to be appointed by the court, at the rate of ten cents a ton for clean coal mined and prepared for market : the said ten cents to represent the full fee simple interest of all the cotenants in the said coal, the said company, however to retain $\frac{5}{8}$ parts of the said sum per ton, for its interest in the said coal. This order to remain in force, subject to the control of the court, pending the suit, or until the said receiver, under a contract to be approved by the court, shall be able to sell the coal in the tract described in the plaintiff's bill on better terms than ten cents per ton aforesaid. James Macfarlane, Esq., of Towanda, Pa., is hereby appointed such receiver."

The case was referred to C. O. Dersheimer, Esq., as master, who reported that B. Rush Jackson was not insolvent when he made sale of his undivided one third interest in the land to Emily L. Patrick ; that the sale was made in good faith and for a sufficient consideration, and was not intended to defraud the grantor's creditors. He also found that twelve cents a ton instead of ten cents a ton was a fair royalty for which The State Line and Sullivan Railroad Company was bound to account to its cotenants.

Exceptions to the master's report were filed both by The State

Line and Sullivan Railroad Company and by Bernice W. Jackson. These exceptions were overruled by the court and a decree entered in accordance with the recommendations of the master.

*Errors assigned* both by The State Line and Sullivan Railroad Company and Bernice W. Jackson were to the action of the court in overruling their exceptions, confirming the master's report and entering the above stated decree.

*Edward Overton* and *Rodney A. Mercur, Ulysses Mercur* with them, for appellant, The State Line and Sullivan R. R. Co., No. 418, Jan. T., 1894.—The tenant in possession may lawfully remain in possession and may take minerals and other valuable products for his own advantage. His ownership is such that he cannot take his own share without also at the same time and by the same act taking the share of his cotenant: Fulmer's App., 128 Pa. 39; act of April 25, 1850, P. L. 573.

The decree was a temporary one, and did not amount to a lease of the property but was only a license to mine coal at a certain royalty with the right reserved to revoke it at any time : Johnstown Iron Co. v. Cambria Iron Co., 32 Pa. 241; Funk v. Haldeman, 53 Pa. 229.

Marvine v. Drexel's Executors, 68 Pa. 363, is a case where the court ordered a sale of real estate where there were joint interests : See also Winton's Appeal, 97 Pa. 385.

A colliery or a mine is in the nature of a trade, and where different persons have interests in it, it is to be regarded as a partnership. Therefore when there are several shares the court will appoint a manager or receiver under the same circumstances which would justify such appointment in the case of a regular copartnership: Freeman on Cotenancy and Partition, sec. 327; Jeffreys v. Smith, 1 Jacob & W. 298; Fereday v. Wightwick, 1 Russ. & M. 46.

*D. C. De Witt, Wm. Elwell, G. E. Elwell* and *Rush J. Thomson* with him, for appellees in No. 418 January term, 1894.

*Rodney A. Mercur, Ulysses Mercur* with him, for appellant, Bernice W. Jackson.—The transfer of a man's goods during the

pendency of a suit against him is a mark of fraud: Twyne's Case, 3 Coke, 80; Babb v. Clemson, 10 S. & R. 424; Streeper v. Eckart, 2 Wharton, 302; Redfield & Rice Mfg. Co. v. Dysart, 62 Pa. 62.

The strict doctrine of the English court of chancery, adopted by several states, that, if a person be indebted at the time, a voluntary settlement is fraudulent and void against existing creditors, has not been followed in our state, but the rule has been modified and followed that such a conveyance is only presumptively fraudulent, and, if the grantor can show that he has enough property left "beyond all doubt" for the payment of the debts, then such conveyance is good, but otherwise it is void as to creditors: Chambers v. Spencer, 5 Watts, 404; Posten v. Posten, 4 Wharton, 31; Thomson v. Dougherty, 12 S. & R. 454; Coates v. Gerlach, 44 Pa. 45; Woolston's App., 51 Pa. 452; Spirett v. Willow, 11 Jurist N. S. part 1, p. 70; Preston v. Jones, 50 Pa. 54.

It is not necessary that the evidence of the fraud alleged be conclusive, or that it appear by positive proof; it may be shown by such facts and circumstances as will warrant a presumption of its existence: McKibbin v. Martin, 64 Pa. 353; Rogers v. Hall, 4 Watts, 359; Confer v. McNeal, 74 Pa. 112; Brinks v. Heise, 84 Pa. 246; Lowe v. Dalrymple, 117 Pa. 564.

*William Elwell*, *Geo. E. Elwell* and *D. C. De Witt*, for Emily L. Patrick, appellee.

THE STATE LINE AND SULLIVAN R. R. CO.'S APPEAL.

OPINION BY MR. JUSTICE WILLIAMS, October 7, 1895:

This appeal brings before us a voluminous record but the questions presented by it are neither numerous nor complicated. The important facts are not in controversy, and appear fully in the report of the learned master. His findings have been reviewed and concurred in by the learned judge who presided at the final hearing.

From these findings it appears that the title to the tract of coal land in controversy was held by George D. Jackson at the time of his death in 1879. He held for himself as owner of an undivided one third interest in the tract, and as trustee for Josiah Jackson and B. Rush Jackson, owners of the other two

thirds. His executors sold and conveyed his one third, making a deed to M. C. Mercur, the plaintiff, for one eighteenth of the tract, and to the State Line and Sullivan R. R. Co. for five eighteenths, to be paid for at the rate or royalty of ten cents per ton for all coal mined therefrom when cleaned and prepared for market. One third of this royalty was to be paid to the executors of George D. Jackson in full for their interest in the coal ; but as the holders of the other two thirds did not join in the contract, the price at which the railroad company should account to them as its cotenants was undetermined. The company entered upon the tract in 1881 by virtue of its title as a tenant in common, and began to remove the coal therefrom. In December of that year a bill was filed by M. C. Mercur, the holder of the undivided one eighteenth of the tract, against the railroad company, which was in actual possession and engaged in mining and removing the coal, and against the other tenants in common, under the provisions of the act of April 5, 1850. Its object was to fix the amount or rate of royalty to be paid by the company to its cotenants, and as incidental to this to determine which of two rival claimants held the title to the one third formerly held by B. Rush Jackson. So far as the estate of G. D. Jackson is concerned it is not easy to see in what manner it was interested in this controversy. The executors, as trustees of the title, had a nominal interest, but as the representatives of the estate of their testator they had none, as the royalty to be paid to the estate had been definitely settled by contract.

The questions to be settled by the proceeding under the act of 1850 were, What royalty should the company pay to the holders of the other two thirds of the title ? and To whom should the company account so far as B. Rush Jackson's one third was concerned ? Upon the first of these questions the defendant contended that the contract price fixed by the executors of George D. Jackson should be regarded as a fair measure of the value of the coal in place as to all the tenants in common.

But it was properly held that the contract relied on could only bind the parties to it. Neither its recitals nor covenants could affect one who had not assented to them, but as to such person the royalty that ought to be paid was an open question,

to be closed either by agreement or by the decree of a court of equity under the act of 1850.

As no agreement was reached in this case, the court was called upon to determine the amount in view of the circumstances affecting the value of the coal in place. It was a question of fact to be determined on the evidence. It was considered and decided by the master. It was then considered by the court below on exceptions to the master's findings, and his report was concurred in. We have been shown no clear error in the findings of fact on which the fixing of the royalty rests, and under our well settled rule the decision upon this question ought not now to be disturbed. The remaining question relates to the ownership of the one third which formerly belonged to B. Rush Jackson. He does not claim any interest in it. The contest is between his vendee and one who claims as a sheriff's vendee. The position of these contestants is as follows : In September, 1880, B. Rush Jackson conveyed his one third to his sister, Mrs. Patrick, for the price of one thousand dollars. The master has found with the approval of the court below that this was a fair price, was actually paid by Mrs. Patrick, and that the transaction was conducted in good faith by both the parties to it. Under this deed Mrs. Patrick claims to be the owner of her brother's interest in the coal, and to be entitled to such royalties as he would otherwise have been entitled to receive for the coal removed. The rival claimant is Mrs. Bernice W. Jackson. Her title rests on a sheriff's sale made under a judgment obtained about one year after the deed to Mrs. Patrick was acknowledged and delivered. Her position is that the sale to Mrs. Patrick was made to delay and defraud creditors, and was therefore fraudulent and void.

Had this position been supported by the evidence the title of B. Rush Jackson would not have been divested by his deed, but would have been bound by the judgment obtained in September, 1881, and passed by the sheriff sale to Mrs. Jackson. But upon this question the master and the court below have found the facts against her. The sale to Mrs. Patrick being a bona fide sale for a fair price, with no fraudulent intent, vested the title in her at the date of the delivery of the deed to her. Nothing remained in B. Rush Jackson to be bound by the lien of the Gravely judgment when it was obtained, and no title

passed to Mrs. Jackson by the sheriff's sale made under it. Another question was much discussed in the court below, and in this court, which we think plays no important part in the case. It is the effect of the order made by the court below in January, 1882, dissolving the preliminary injunction and permitting the company to proceed with its mining operations on condition that it should keep an account of the coal mined and pay into the hands of a receiver a royalty of " ten cents per ton for clean coal mined and prepared for market, the said ten cents to represent the full fee simple interest of all the cotenants in the said coal, the said company to retain five eighteenths parts of the said sum for its interest in the said coal." This was an interlocutory order, and was subject to such modification as to the rate of the royalty as upon final hearing the testimony might seem to require. It was not in the form in which it should have been drawn, but taken in its proper relation to the preliminary injunction with which it dealt and whose place it was to supply till the final hearing, there ought to be no trouble in understanding it and giving to it its proper effect. It did not fix the value of the coal in place, but named a provisional royalty upon the payment of which the coal might be removed and disposed of by the company, leaving the final accounting to be made upon the testimony when taken in the usual manner.

The learned judge had no power to do more at the time the order was made, and had he attempted to make a final adjudication of the royalty upon ex parte affidavits without the consent of the owners of the coal it would have bound no one. The company mined and removed this coal under an agreement with the executors of Geo. D. Jackson fixing the royalty to be paid to them for their one third. As to the other two thirds it proceeded under an interlocutory order which required the payment of a provisional royalty of ten cents per ton as the mining proceeded, subject to such change in the royalty as the court might make when it had the whole case before it. The company was bound to know that a final order could not be made till final hearing was reached, unless it was done with the consent of the parties to be affected thereby. The subject has now been fully considered on final hearing. The question of the amount at which the royalty ought in good faith to be fixed has been considered in the light of all the evidence furnished by

both sides.    It has been regularly determined, and so far as we have been able to master the evidence, it has been wisely determined by the decree appealed from.    It is now affirmed, the costs of this appeal to be paid by the appellants.

---

### APPEAL OF BERNICE W. JACKSON.

The syllabus and statement of facts appear in Mercur v. State Line & Sullivan R. R. Co., ante, p. 12, where this case is disposed of in the opinion of the Supreme Court.

OPINION BY MR. JUSTICE WILLIAMS, October 7, 1895.

This is an appeal from the decree just considered and affirmed on the appeal of The State Line and Sullivan Railroad Company.

The appellant claims to hold the one third interest of B. Rush Jackson in the tract of coal land in controversy.    The master and the learned judge who sat as chancellor in this case found the facts to be that Jackson had sold his interest in the land to Mrs. Patrick, and made his deed therefor in good faith and for a full price before the lien under which Mrs. Jackson's title was acquired was entered.    It is from this finding and the decree resting upon it that this appeal is taken.

We have stated our reasons for affirming the decree in the opinion filed in the appeal of the railroad company, and it does not seem necessary to do more than refer to them at this time.

For the reasons then stated this decree is affirmed.    The appellant to pay the costs upon her appeal.