## McIntosh, Appellant, *v.* Ropp.

*Appeals—Specifications of error—Practice, C. P.—Act of April 22, 1874, P. L. 109.*

1. Assignments of error must be so complete in themselves that reference to other parts of the record is unnecessary.

2. The scheme of the Act of April 22, 1874, P. L. 109, providing for the trial of common-law actions by the court without a jury, is in practical accord with established equity practice, and in cases tried thereunder all specifications of error on appeal must be to the final rulings of the court below. Where exceptions have been taken to the findings and conclusions of the trial court, the assignments should in each instance show that fact and the ruling upon the exception.

*Tenants in common—Minerals—Lease to third parties—Action by cotenant—Right to profits—Oil and gas—Measure of damages.*

3. At the common law, ordinarily an action could not be maintained by a tenant in common against a cotenant in sole possession to recover

a share of the profits of the estate; but the Act of April 25, 1850, P. L. 569, 573, sec. 24, recognizes such a right where minerals are held in common; and it is settled in this state that oil and gas contained in or obtainable through lands are minerals.

4. Where the life tenant of a tract of land leases the right to mine oil and gas therefrom and the lease is ratified by one of the two holders of the title in remainder, an action by the nonratifying remainder-man against the lessees for her share of the profits of the mining operations carried on by the lessees must be regarded, since the lease was in legal effect a sale, as based upon a development of the land by a tenant in common and a claim of a cotenant for her share of the proceeds. In such case the fact that the actual operations were carried on by third parties under a lease, and not directly by the consenting remainder-man, will not serve to make the defendants trespassers, or to cause them to be regarded other than as cotenants.

5. In such cases the measure of damages must depend largely upon the peculiar circumstances, but compensation is the usual rule where there are no facts showing intentional wrong; and as between tenants in common such compensation may be measured by the fair market value of the minerals in place, which may be figured on the basis of the royalty to be obtained for the privilege of removing such mineral, in view of all the circumstances.

Argued Oct. 11, 1911. Appeals, Nos. 217, 218, 219 and 220, Oct. T., 1911, by plaintiffs, from judgments of C. P. Butler Co., June T., 1909, No. 6, Sept. T., 1909, No. 9, March Term, 1910, No. 57, March T., 1910, No. 82, in cases of Addie McIntosh v. Wm. H. Ropp; Addie McIntosh v. Daniel Dierkin; Addie McIntosh v. Daniel Dierkin, William H. Ropp and C. E. Blaney; and Addie McIntosh v. C. E. Blaney. Before FELL, C. J., BROWN, MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ. Affirmed.

Bill in equity for an account, action of trespass for oil taken from land, ejectment for twenty acres of land in Fairview township, and trespass for damages for mining operations. Trials by court without a jury under act of April 22, 1874. Before GALBREATH, P. J.

The facts appear in the opinion of the Supreme Court and in McIntosh v. Ropp, 222 Pa. 606.

The court determined the equity and trespass cases against the plaintiff and in the action of ejectment de-

cided that plaintiff could only recover her one-half interest in the land subject to the right of the defendant to continue to operate under the lease. Plaintiff appealed.

In McIntosh v. Ropp, the specifications of error were as follows:

1. The court erred in finding that the taking of the lease by B. B. Seibert from Kenneth McIntosh was in good faith on part of Seibert, and in the honest belief that Kenneth McIntosh was the owner of the land.

2. The court erred in finding that Dierkin and Whitener did not learn or have actual knowledge that Kenneth McIntosh was not the owner of the land until the year 1907, or have knowledge of any defect in the title and that the expenditures made by them were made on the faith of a good title.

3. The court erred in finding as a conclusion of law, that equity has no jurisdiction of plaintiff's cause of action as set forth in her bill.

4. The court erred in finding as a conclusion of law that the plaintiff has an adequate remedy at law for the damage done to her inheritance.

5. The court erred in finding as a conclusion of law that the plaintiff's bill should be dismissed.

6. The court erred in directing, unless therefore exceptions are filed within ten days from the filing hereof let a decree be drawn in accordance.

In McIntosh v. Dierkin the specifications of error were as follows:.

The court erred in the following findings of facts:

In finding that the royalty of one-eighth of the oil produced from the said wells was paid to Kenneth McIntosh with the knowledge of the plaintiff, as the court should have found as a fact that Addie McIntosh, the plaintiff, had no knowledge whatever, as to any claim on part of Dierkin or Whitener, and knew nothing whatever of the payment of royalty to her father, and there is no proof in the case to sustain it.

In finding that the defendant did not learn, or have ac-tual knowledge that Kenneth McIntosh was not the owner of the land until 1907, and that Whitener did not have such knowledge during the time that he owned an interest in the property, and that the several lessees, up until shortly before the bringing of the actions, were without knowledge of any defect in the title, and that the expenditure of the money was made in good faith.

In not finding as a fact there is no proof in the case that Addie McIntosh had any knowledge of the indenture from her father to Seibert or Seibert's claim to the land, or of the claim of Dierkin or Whitener to the land for any purpose, or knowledge of the conversation between Dierkin and her brother, Edward, at the time they allege they were looking at the property with the intention of buying it, or that her father was receiving a royalty.

The court erred in its conclusions of law as follows:

In concluding as a matter of law that the plaintiff's damages are not to be measured by the price obtained from the oil when produced and sold, but by the lessened value of the inheritance, consequent of the taking of the oil. This being true, we might end the consideration of the case and in the absence of the proof of the lessened value of the inheritance, enter judgment for the defendant under the agreement above referred to.

In concluding as a matter of law that there was no willful trespass committed by the defendant, no circumstances of aggravation attended the taking of the oil, but on the contrary the life tenant was receiving one-eighth royalty with the knowledge and acquiescence of the plaintiff who resided with him on the farm.

In concluding as a matter of law that the measure of damages in this case, is not the particular value of the oil or other products produced by the defendant from the land and removed therefrom, as a merchantable commodity, that is, the market value of the production after it had been produced and severed from the land, less the proper cost and the expense of the production, but the

damage done to the interest of the plaintiff in remainder, that is, to her inheritance, and it is not being contended, and there being no proof to show that the taking of the oil did in itself lessen the value of the inheritance, the plaintiff is not entitled to recover.

In concluding as a matter of law that the defendant not being a willful trespasser, and his possessions and operations of the leasehold not having been attended with any circumstances of aggravation, but on the contrary having been encouraged by one of the remainder-men to enter upon and operate and develop the property under the lease given by the life tenant, who received the royalty with a knowledge of a remainder-man then residing on the farm. The measure of the plaintiff's damage is the value of the oil in place, which having been paid to the life tenant, who it is agreed was a proper person to receive the same, the plaintiff is not, therefore, entitled to a further recovery.

In not concluding as a matter of law that the true measure of damages in this case is the value of the oil taken in the pipe lines, less the expense of putting it there, which expense would include labor and necessary improvements and repairs to the fixtures and appliances used in doing this, with such additional sum as would compensate the plaintiff for the detention of the oil, or for the delay in not receiving the damages that she was entitled to receive, this sum not to exceed legal interest from the various sums received by the defendant, for the oil which he wrongfully took and sold.

The court erred in entering judgment for the defendant, and not entering judgment for the plaintiff one-half of $20,598.35 after deducting the necessary expense to which the defendant is entitled with interest.

The court erred in overruling the defendant's exceptions to the decision of the court, filed June 21, 1911, and directing judgment to be entered in favor of the defendant.

In McIntosh v. Blaney the specifications of error were as follows:

The court erred in the following findings of facts:

In finding that the royalty of one-eighth of the oil produced from the said wells was paid to Kenneth McIntosh with the knowledge of the plaintiff, as the court should have found as a fact that Addie McIntosh, the plaintiff, had no knowledge whatever as to any claim on part of Dierkin or Whitener, and knew nothing whatever of the payment of royalty to her father, and that there is no proof in the case to sustain it.

In finding that the defendant did not learn, or have actual knowledge that Kenneth McIntosh was not the owner of the land, until 1907, and that Whitener did not have such knowledge during the time that he owned an interest in the property, and that the several lessees, up until shortly before the bringing of the actions, were without knowledge of any defect in the title, and that the expenditure of the money was made in good faith.

In not finding as a fact there is no proof in the case that Addie McIntosh had any knowledge of the indenture from her father to Seibert or Seibert's claim to the land, or of the claim of Dierkin or Whitener to the land for any purpose, or knowledge of the conversation between Dierkin and her brother, Edward, at the time they allege they were looking at the property with the intention of buying it, or that her father was receiving a royalty.

The court erred in its conclusions of law as follows:

In concluding as a matter of law that the plaintiff's damages are not to be measured by the price obtained from the oil when produced and sold, but by the lessened value of the inheritance, consequent on the taking of the oil.

In concluding as a matter of law that there was no willful trespass committed by the defendant, no circumstances of aggravation attended the taking of the oil, but on the contrary the life tenant was receiving one-eighth royalty with the knowledge and acquiescence of the plaintiff who resided with him on the farm.

In concluding as a matter of law that the measure of damages in this case, is not the particular value of the oil

or other products produced by the defendant from the land and removed therefrom, as a merchantable commodity, that is, the market value of the production after it had been produced and severed from the land, less the proper cost and the expense of the production, but the damage done to the interest of the plaintiff in remainder, that is, to her inheritance, and it is not being contended, and there being no proof to show that the taking of the oil did in itself lessen the value of the inheritance, the plaintiff is not entitled to recover.

In concluding as a matter of law that the defendant not being a willful trespasser, and his possessions and operations of the leasehold not having been attended with any circumstances of aggravation, but on the contrary having been encouraged by one of the remainder-men to enter upon and operate and develop the property under the lease given by the life tenant, who received the royalty with a knowledge of a remainder-man then residing on the farm. The measure of the plaintiff's damage is the value of the oil in place, which having been paid to the life tenant, who it is agreed was a proper person to receive the same, the plaintiff is not, therefore, entitled to a further recovery.

In not concluding as a matter of law that the true measure of damages in this case is the value of the oil taken in the pipe lines, less the expense of putting it there, which expense would include labor and necessary improvements and repairs to the fixtures and appliances used in doing this, with such additional sum as would compensate the plaintiff for the detention of the oil, or for the delay in not receiving the damages that she was entitled to receive, this sum not to exceed legal interest from the various sums received by the defendant, for the oil which he wrongfully took and sold.

The court erred in entering judgment for the defendant, and not entering judgment for the plaintiff one-half of $1,888.70, after deducting the necessary expense to which the defendant is entitled with interest.

The court erred in overruling the plaintiff's exceptions

to the decision of the court, filed June 21, 1911, and directing judgment to be entered in favor of the defendant.

In McIntosh v. Dierkin et al., the specifications of error were as follows:

The court erred in the following findings of facts:

In finding that the defendants did not learn or have actual knowledge that Kenneth McIntosh was not the owner of the land until 1907, and that Whitener did not have such knowledge during the time that he owned an interest in the property, and that the several lessees up until shortly before the bringing of the actions, were without knowledge of any defect in the title, and that the expenditure of money was made in good faith.

In not finding that there is no proof in the case that Addie McIntosh had any knowledge of the indenture from her father to Seibert, or of Seibert's claim to the land, or of the claim of Dierkin, Whitener or Ropp to the land for any purpose or knowledge, of the conversation between Dierkin and Whitener and her brother, Edward, at the time they allege they were looking at the property with the intention of buying it, or that her father was receiving a royalty.

The court erred in its conclusions of law as follows:

In concluding as a matter of law that Whitener and Dierkin, before taking the lease and expending their money thereon had no knowledge or notice of title in the plaintiff.

In concluding as a matter of law that under the circumstances the estoppel of Edward McIntosh was as ample in scope and relation as the provisions of the contract which is thus ratified, and as wide as the evident understanding of the parties when the lease was given and produced itself beyond the lifetime of the lessor.

In concluding as a matter of law that the plaintiff had received compensation on the basis by delivery to her of her proportionate share of the royalty produced.

In concluding as a matter of law it is agreed that her proportionate share of the royalty is a proper measure of the value of the oil in place.

In concluding as a matter of law that this estoppel worked a conveyance of the one-half of the working interest of the oil and gas right in the land to C. E. Blaney, the defendant, on the death of the life tenant.

In concluding as a matter of law that on the death of the life tenant, the plaintiff and defendant became tenants in common of the oil and gas right in the land in dispute. The interest of the defendant therein being measured by his right under the lease of Seibert, as ratified by Edward E. McIntosh and being the undivided one-half of the working interest therein.

In concluding as a matter of law that the measure of the mesne profits is the value of the oil produced in place, which in turn is measured by the royalty interest, which the plaintiff has already received. That the plaintiff is entitled to judgment of one-half interest in and to the oil and gas right in the land in dispute, but without prejudice to her cotenant, the defendant's equal right to possession, for the purpose of necessary operations in producing and removing his share of the oil and gas as the same can be produced in paying quantities, together with the right to remove any machinery, fixtures and buildings on said premises by him or those claiming under him, as provided in the lease to Seibert when operations are ended, and subject to an account to the plaintiff for the value of one-half of the oil in place, to-wit, one-half of the royalty.

In not concluding as a matter of law that the true measure of damages in this case is the value of the oil taken in the pipe lines, less the expense of putting it there, which would include labor and necessary improvements and repairs to the fixtures and appliances used in doing this, with such additional sum as would compensate the plaintiff for the detention of the oil or for the delay in not receiving the damages that she was entitled to receive, which sum not to exceed legal interest on the various sums received by the defendant for the oil which he wrongfully took and sold.

That the court erred in not entering judgment in favor

of the plaintiff for the amount of oil taken from the said well from the date of the death of Kenneth McIntosh, less the necessary expense to which the defendant is entitled.

The court erred in finding as a conclusion of law that the plaintiff is entitled to judgment for one-half interest of, in and to the oil and gas right in the land in dispute but without prejudice to her cotenant the defendant's equal right of possession for the purposes of necessary operations in producing and removing his share of the oil and gas so long as the same can be produced in paying quantities, together with the right to remove any machinery, fixtures and buildings placed on said premises by him or those claiming under him as provided in the lease to Seibert when operations are ended, and subject to an accounting to the plaintiff for the value of one-half of the oil in place, to-wit, a one-half of the royalty.

The court erred in not finding as a conclusion of law that the plaintiff is entitled to judgment for the whole interest in and to the oil and gas right in the land in dispute, and that the defendant's rights therein, if any he had, expired at the time of the death of Kenneth McIntosh, the life tenant, and in not entering judgment for the value of the whole amount of the oil produced since the death of Kenneth McIntosh.

*John M. Greer*, with him *John B. Greer* and *Thomas H. Greer*, for appellant.—The quantity and value of the oil produced and sold, less expense of production, is the correct rule to measure the damages: Crawford v. Forest Oil Co., 208 Pa. 5.

*T. C. Campbell*, with him *P. W. Lowry*, *W. Z. Murrin* and *F. J. Forquer*, for appellees.—The correct measure of damages is the fair market value of the mineral in place, represented by the royalty to be obtained for the privilege of removal: Fulmer's App., 128 Pa. 24; Mercur v. R. R. Co., 171 Pa. 12; McGowan v. Bailey, 179 Pa. 470.

OPINION BY MR. JUSTICE MOSCHZISKER, January 2, 1912:

These four appeals are in cases arising out of the same state of facts. The causes were tried together in the court below and argued as one in this court, on the understanding that they should be here disposed of in like manner.

Addie McIntosh, the plaintiff and appellant, is the owner of an undivided one-half interest in a farm of 128 acres in Butler county, the other undivided half belonging to her brother, Edward E. McIntosh. This farm was originally owned by their mother, Rose McIntosh, who died intestate May 15, 1888, leaving to survive her a husband, Kenneth McIntosh, the above-named two children, and a daughter Lizzie. At the time of the mother's death and during the period of the other facts here involved, the father lived on the farm with Edward and Addie, but the daughter Lizzie resided in New York state. Prior to the acquisition of this property by Rose McIntosh the land had been developed for oil and gas, but the operation had been abandoned at the time of her death.

On July 22, 1895, Kenneth McIntosh executed a lease to B. B. Seibert for twenty acres of said farm at a one-eighth royalty; it was in the usual form, and was to run for fifteen years and as long thereafter as oil and gas should be produced in paying quantities. None of the children joined in the execution of this lease, but they were all of full age at that time. The lessee went upon the land and drilled two unproductive wells, and in November, 1896, when about to abandon the property, he assigned all his interests to Daniel Dierkin and Valentine Whitener for a consideration of $1,200. They, "as the result of the expenditure of a considerable sum of money" managed to make the wells "fair producers." On March 19, 1898, Whitener sold his interest to Dierkin for $3,000, and the latter retained possession until July, 1907, at which time he assigned the lease to W. H. Ropp for $4,000. Ropp con-

tinued to operate the two wells until April 5, 1909, when he sold to C. E. Blaney for $4,000; and the latter still holds possession.

April 7, 1900, Lizzie McIntosh sold and conveyed her undivided one-third interest in the farm to her brother and sister. January 8, 1910, Kenneth McIntosh died. January 13, 1910, Edward E. McIntosh conveyed to his sister Addie all his interest in the oil rights, "in and to the twenty acres of land comprising said leasehold," together with all oil produced in the past from the two wells, retaining the right to one-half of the royalty fixed by the lease. On the same day they executed a division order to the company through whose lines the oil was run, and thereafter the royalty was paid to them in equal proportions. Before that date the royalty had been paid to Kenneth McIntosh, with the knowledge of his two children, many of the payments having been made directly to Edward.

In 1907 Edward and Addie brought a joint action in trespass against Dierkin, and another against Ropp, to recover damages for the taking of oil under the lease; but on appeal it was held that Edward was estopped by his knowledge and conduct (as detailed in the report) from again enforcing "payment for the oil thus run," this court stating, "as to the sister Addie . . . . we are of opinion that the facts established at the trial are not sufficient to constitute an estoppel as to her. However, the present action cannot prevail, because it being joint, and there being sufficient facts established to estop Edward, the right to a joint recovery being thus defeated, this action must fall." Addie then instituted the following actions: April 20, 1909, proceeding in equity against Ropp praying for an accounting for her share of the oil, exclusive of the royalty, from July, 1907, to April, 1909; June 10, 1909, action of trespass against Dierkin to recover damages because of his operations from March 18, 1898, to July 1, 1907; January 13, 1910, action of ejectment against Blaney to recover the land and mesne profits; February 14, 1910, action of trespass against Blaney to recover

damages because of his operations from April 5, 1909, to January 8, 1910; and these are the cases before us on appeal.

.The plaintiff averred that the various defendants went upon the land and carried on their operations "without authority from or consent of the plaintiff," and that they had wrongfully retained from her the oil and gas produced therefrom; that "at the time of the unauthorized, unlawful and wrongful entry of the defendant . . . . the plaintiff was the owner . . . . subject to the life-estate of her father, . . . . and had a property in the one-half of the oil, gas and other by-products . . . . taken out, removed, or appropriated, . . . . by the defendant, which, exclusive of royalty, belonged absolutely and immediately to her as personal property, and for one-half of which the defendant is answerable to the plaintiff in damages." She claimed that the measure of her damages was the market value of the oil after it had been severed from the land less the expense of production and the royalty paid by the defendant, while the defendant contended that the only proper measure was the value of the oil in place as represented by the royalty already paid.

At the trial the parties, inter alia, agreed: "That the lease was made by Kenneth McIntosh, who was a tenant for life with remainder in Addie McIntosh, the plaintiff, and her brother, Edward McIntosh;" that "Edward McIntosh, the owner of the one-half of the title in remainder, ratified the lease made by the life-tenant and the lessee was in possession under him as well as under the life tenant;" that "If the plaintiff is not entitled under the circumstances and the law of the case to recover the one-half of the seven-eighths of the market value of the production during the life of the life-tenant after it has been produced and severed from the land, less the proper cost and expense of its production, then judgment to be entered for the defendant;" that "If the court should be of opinion that the damages are not to be measured by the value of the oil and other products, after being severed, less cost

and expense of production, but by the value of the royalty proper to be paid or delivered, then judgment to be entered for the defendant, as no proof will be offered as to the proper amount of royalty to be delivered and a royalty under the lease having been delivered to Kenneth McIntosh, which royalty is to be treated as having properly been delivered;" that "If damages are found in favor of the plaintiff, based upon the amount of production, it is to be based upon the one-half of the seven-eighths of the whole production, a royalty of one-eighth having already been paid to the life-tenant;" that "Upon the trial the plaintiff will not contend that the taking of the oil during the time the defendant was in possession, did in itself lessen the value of the inheritance, but that the damages are to be measured only by the value of the oil produced, less the cost and expense of producing it, and will make no claim for damages in any other way, nor for injury done to the surface of the land;" further, "While this agreement admits that the plaintiff's title to the land is as set forth above, it is not to be taken as an admission that the defendant or lessee under whom the defendant claims had actual knowledge of her title." It was agreed in the ejectment suit, that the question whether the ratification of the lease by Edward "ended with the death of the life-tenant or still continued is to be decided by the court;" that in case of recovery of mesne profits according to the measure of damages contended for by the plaintiff the one-eighth of the whole value of the oil should be deducted, "the plaintiff having received one-eighth clear of expense as for royalty;" that in event of the court deciding that the value of the royalty proper to be paid was the correct measure of damages, the royalty already paid to the plaintiff "shall be taken to be a fair royalty in full of all claims for mesne profits;" and that "if the plaintiff's measure of damages should not be adopted by the court, then the plaintiff shall make no claim for mesne profits." Counsel for the appellant in his printed argument states, "The only question involved is the measure of damages for one-

half of the oil produced from her (the plaintiff's) working interest in the wells."

The court below refused to adopt the measure of damage contended for by the plaintiff and determined the equity and trespass cases against her. In the action of ejectment the court decided that the plaintiff could only recover her one-half interest in the land subject to the right of the defendant to continue to operate under the lease on paying her a one-eighth royalty, and entered judgment accordingly.

The plaintiff has filed many assignments of error, but none of them is in proper form. The Act of April 22, 1874, P. L. 109, under which the common-law actions were tried, provides: "If exceptions to the findings of facts or conclusions of law be filed . . . . the court . . . . may . . . . order judgment to be entered according to the decision previously filed, or make such modification thereof as in justice or right shall seem proper, subject . . . . to review by . . . . the Supreme Court. . . . Every such case taken to the Supreme Court . . . . shall be heard and determined therein as cases of appeal in equity proceedings. . . ." The scheme of this act is in practical accord with established equity practice, and in cases tried thereunder all specifications of error must be to the final rulings of the court below. Where, as in the present case, exceptions have been taken to the findings and conclusions of the trial court, the assignments should in each instance show that fact and the ruling upon the exception. We have expressly so decided in equity cases: New Cumberland Borough v. Riverton Cons. Water Co., 232 Pa. 531; Chisholm v. Thompson, 233 Pa. 181; Berg v. Bank, ante, p. 469. Furthermore, we have laid it down generally that assignments of error must be so complete in themselves that reference to other parts of the record is unnecessary: Landis v. Evans, 113 Pa. 332. In this busy age of overburdened courts, labor-saving rules of practice are essential to expeditious judicial work, and their observance must be insisted upon. The present assignments are defective in failing to

show that the matters therein attempted to be called to our
attention represent the final rulings of the court below, and
for that reason they are dismissed.    However, we have
looked into all the points sought to be raised, and we shall
now refer to those whose consideration seems essential to a
proper disposition of these appeals.

While the lease made by Kenneth McIntosh, the life
tenant, was not executed by his son, Edward, it was par-
ticipated in by him to such an extent that he should be
viewed as a party to it.   In McIntosh v. Ropp, 222 Pa.
606, we ruled that the actions of Edward, prior and subse-
quent to the taking of the lease, were sufficient in law to
constitute an estoppel against him.   The practical effect
of this estoppel, so far as these defendants are concerned,
was to put Edward McIntosh in the position of a party to
the lease; and when his father died and he became entitled
to the full enjoyment of his estate, that circumstance
merely served to feed the estoppel and strengthen the
right to treat the lease as though executed by him.   In
addition, we have the express agreement upon the record
that "Edward McIntosh, the owner of the undivided one-
half of the title in remainder, ratified the lease made by
the life-tenant and the lessee was in possession under him
as well as under the life-tenant."

Since the lease was in legal effect a sale (Marshall v.
Mellon, 179 Pa. 371, 375; Stoughton's Appeal, 88 Pa. 198;
Blakley v. Marshall, 174 Pa. 425, 429), the case must
be looked upon as a development of the land by a tenant
in common and a claim by a cotenant for her share of the
proceeds.   The fact that the actual operations were carried
on by third parties under a lease, and not directly by Ed-
ward McIntosh, would not serve to make the defendants
trespassers, or to cause them to be regarded other than as
cotenants: McGowan v. Bailey, 179 Pa. 470, 479.   The
defendants acted in good faith, with the honest belief that
Kenneth McIntosh was the owner and that they were
operating under a valid grant; and while we have hereto-
fore held that the plaintiff was not estopped from claiming

the value of her share of the oil, we at no time considered or determined what her proper share was, much less that she was in a position to ask that the lease be set aside as a nullity. In every case of this character the measure of damage must depend largely upon the peculiar circumstances, but compensation is the usual rule where there are no facts showing intentional wrong; and as between tenants in common such compensation may be measured by the fair market value of the mineral in place, which may be figured on the basis of the royalty to be obtained for the privilege of removing such mineral, in view of all the circumstances: Forsyth v. Wells, 41 Pa. 291; Lehigh Coal Co. v. Wilkes-Barre & Eastern R. R. Co., 187 Pa. 145, 150; McGowan v. Bailey, 179 Pa. 470; Fulmer's Appeal, 128 Pa. 24, 39; Mercur v. Railroad Co., 171 Pa. 12.

At the common law, ordinarily an action could not be maintained by a tenant in common against a cotenant in sole possession to recover a share of the profits of the estate: Coleman's Appeal, 62 Pa. 252, 276; Pico v. Columbet, 12 Cal. 414; but our Act of April 25, 1850, P. L. 569, 573, sec. 24, recognizes such a right where minerals are held in common; and it is settled in this state that oil and gas contained in or obtainable through the land are minerals: Stoughton's Appeal, 88 Pa. 198; Westmoreland N. Gas Co. v. Dewitt, 130 Pa. 235; Gill v. Weston, 110 Pa. 312; Marshall v. Mellon, 179 Pa. 370. In Fulmer's Appeal, supra, we said as to a tenant in common, "His ownership is such that he cannot take his own share, without also at the same time and by the same act taking the share of the cotenant. But in mining operations there is always more or less expense and risk which must necessarily be incurred by the person who conducts them. The tenant out of possession incurs none of the risk or expense, when the mining operations are conducted exclusively by the tenant who is in possession. Nevertheless, he is entitled to be compensated for the appropriation by his cotenant in possession for his proportion of the mineral taken by the latter. . . . Where the mineral land has never been devel-

oped . . . . the fair market value of the mineral in place, which would be the value of the privilege of removing it, in view of its special circumstances, would represent the true measure of compensation to the owner. So, too, if the land were fully developed . . . . and all the expenses incurred which would enable the operator to proceed at once to the taking of the mineral, the value of the mineral in place, ready to be taken, would be enhanced by these considerations, and the price of the privilege of taking it in such circumstances would also represent the measure of the compensation." The case just cited distinguishes several of the authorities relied upon by the appellant to support her contention as to the proper measure of damage, and we feel that, on reason, the rule there laid down should be adopted in the present case; for, owing to the fugacious nature of oil and gas, and their liability to be diverted by operations upon adjoining and near-by lands, it is peculiarly necessary that cotenants should not be unduly restricted in the enjoyment of such properties.

The case of Williamson v. Jones, 43 W. Va. 562, cited to us by the appellant, largely rests upon statutory provisions. Crawford v. Forest Oil Co., 208 Pa. 5, is readily distinguishable; there the lessee knew that the lessor had but a life estate and "that the plaintiffs did not recognize the lease . . . . as binding on them after his death;" the defendant purchased with like knowledge, after the death of the life tenant, and entered the land knowing that it was about to deprive the plaintiffs of their rights. There was no evidence as to a proper royalty to be paid; the rule prevailing between tenants in common had no application, and the measure of damage was adopted which best applied to the special facts in that case.

It would serve no good purpose to take up the question of the correctness of the remedies in the various actions instituted by the plaintiffs, and the assignments of error do not require us so to do. While we cannot agree entirely with the line of reasoning pursued by the court below, or

with some of its conclusions, we are satisfied that the ultimate result reached in each case was in substance such as the facts involved called for under the law.

All of the appeals are dismissed at the cost of the appellant.