GERMER et al. v. DONALDSON.

(Circuit Court of Appeals, Third Circuit.
March 7, 1927. Rehearing Denied
May 2, 1927.)

No. 3490.

1. **Partnership** ⟐⟐3—**Partnership relation does not arise from joint ownership of, or community of interest in, property.**

Joint ownership of property, or a community of interest in it will not of itself make the co-owners partners.

2. **Partnership** ⟐⟐12—**Community of losses, as well as of profits, is essential to "partnership inter sese."**

To constitute a partnership inter sese, there must be a community of losses, as well as of profits.

3. **Mines and minerals** ⟐⟐97—**Assignee of interest in oil lease held not partner of co-owner.**

An assignee of an interest in oil leases *held* not a partner with his co-owners, in view of absence of any sharing of losses.

4. **Mines and minerals** ⟐⟐101—**Owner of forgotten assignment of interest in oil lease held not entitled to recover assigned interest in net profits, but only portion of owner's royalty.**

Where holder of unrecorded assignment of one-sixth interest in oil leases practically abandoned his interest for nearly 20 years, without seeing or communicating with his co-owners, who had forgotten the assignment to him, he was not entitled, after successful development, to recover one-sixth of net profits, but only to recover one-sixth of customary owner's royalty.

5. **Mines and minerals** ⟐⟐101—**Co-owner's want of knowledge of development operations, or refusal to join, does not change rule precluding him from recovering only customary royalty, instead of profits.**

That a co-owner of oil in place does not know of development operations, or knows of it

and refuses to give his consent, and notifies party assuming risk that he will expect his proportional share of profits, does not change rule that he is not entitled to profits, but only to customary royalty.

Suit by John F. Donaldson against Edward G. Germer and others. Decree for plaintiff, and the named defendant appeals. Reversed, with directions.

W. G. Stathers, of Clarksburg, W. Va., George E. Alter and Alter, Wright & Barron, all of Pittsburgh, Pa., for appellant.

John E. McCalmont, of Pittsburgh, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. Otto Germer and Edward G. Germer owned a large number of "wild cat" oil and gas leases in undeveloped territory in West Virginia. These leases had been secured in the first place by John F. Donaldson on a number of farms in West Virginia and the title to them taken in his name. Among them was a lease on the Crites farm for a term of 25 years. Associated with him in the enterprise were the Germers. Donaldson was to have a one-third interest in the leases, and the Germers the other two-thirds. In contemplation of a sale of the leases to the Philadelphia Company of West Virginia, they were all assigned to the Germers. Thereafter, on April 5, 1906, they assigned all the gas rights and one-half of the oil rights in the leases to the Philadelphia Company of West Virginia. At the same time, a written working agreement was entered into by them, which provided that either party to the leases should have the right to drill for oil; but, if a producing well was drilled, the drilling party was required to notify the other party, who was then given 30 days to elect to become one-half owner in the well upon payment of one-half the expense of drilling, equipping, and operating. Upon his failure so to elect, he forfeited his right to share in the oil produced from that well.

On August 24, 1906, the Germers assigned to Donaldson an undivided one-third of the one-half of the oil leases retained by them. Donaldson's interest in the leases was then equal to that of each of the Germers, as was originally intended. Donaldson and the Germers each then had an undivided one-sixth interest in the leases. These assignments were subject to the land owner's royalty interest of one-eighth of the oil in place and the assignment to Donaldson, which he never recorded, was further subject to the terms and condition of the working agreement between the Germers and the Philadelphia Company. Subsequently the Philadelphia Company of West Virginia assigned its interest in the leases to the Philadelphia Oil Company.

Otto Germer died in 1911, and no development took place on the land covered by these leases until July 27, 1920, when the Philadelphia Oil Company completed the drilling of a productive well. The company notified Edward G. Germer of the well. Soon thereafter a second productive well was drilled, and the company again notified Germer, and also stated that it would not drill any more wells unless he would share one-half the expenses of drilling, etc., whether the wells were productive or dry. Germer agreed to do so. The company continued to drill successfully, and between the years 1920 and 1925 Germer received a net profit, from drilling on the Crites lease, of $188,625.19 as his share in the operations. Within that time his share of the expenses of drilling productive wells was $90,-373.39 and of drilling nonproductive wells was $10,177.79. It appears that Donaldson had forgotten all about his unrecorded interest in the leases, and so had Edward G. Germer, who had never seen Donaldson but three or four times, and had neither seen nor heard from him since 1906. All the negotiations between Donaldson and the Germers were conducted by Otto Germer.

In September, 1924, Donaldson was in the office of the Philadelphia Company and learned that it had been operating the Crites lease. Shortly thereafter he went back to California, where he had been living for some time, got the 18 year old assignment, returned with it, and demanded from Germer one-third of the net profits which he had received from the Philadelphia Company. Germer refused, and Donaldson filed this suit, demanding an accounting. The case came on for hearing on bill, answer, and proofs. The District Court entered a decree directing Germer to pay to Donaldson $62,875.06, one-third of his share of the net profits from the operation. From this decree Germer appealed.

There is but a single and narrow question for decision: The legal rights of Donaldson in 1924. Did he have the right, under the circumstances, to demand one-third of the profits which Germer had made on the enterprise? If he did, that ends the case; but, if he did not, what were his rights?

[1-3] Donaldson's share depends upon his

ownership in the lease and his relation to the enterprise. If he and Germer were partners, he would be entitled to one-third of the profits received by Germer, or a one-sixth share of the entire profits realized from the operation. Fulmer's Appeal, 128 Pa. 24, 39, 18 A. 493, 15 Am. St. Rep. 662. It is not contended that there was an express partnership between them. Did the ownership of an undivided one-sixth interest in the lease create a partnership? Donaldson knew nothing of the operation until he returned from California in 1924. He had not agreed to anything except to take the assignment of a one-sixth interest, with the knowledge that either Germer or the Philadelphia Company might drill wells on the land covered by the leases. The joint ownership of property, or a community of interest in it, will not of itself make the owners partners. Harding v. Foxcroft, 6 Me. (6 Greenl.) 76; Maclay v. Freeman, 48 Mo. 234; Fulton v. Dessin, 3 Pa. Co. Ct. R. 318; Brown v. Jaquette, 2 Del. Co. R. (Pa.) 245; Willamette Casket Co. v. McGoldrick, 10 Wash. 229, 38 P. 1021. If the drilling operation had been a failure, admittedly Donaldson could not have been held liable for a proportional share of the losses. It has been held in a number of cases that, to constitute a partnership inter sese, there must be a community of losses, as well as of profits. Mayrant v. Marston, 67 Ala. 453; Beecham v. Dodd, 3 Har. (Del.) 485; Johnson v. Carter, 120 Iowa, 355, 94 N. W. 850; Gill v. Ferris, 82 Mo. 156; Flint v. Eureka Marble Co., 53 Vt. 669. There was no such community here, and therefore Donaldson may not share the profits of the operation with Germer on the ground of partnership.

[4] The assignment to Donaldson was made subject to the terms of the working agreement between the Philadelphia Company and Germer. One of those terms was the right of the Philadelphia Company to drill for oil, and another was the right of Germer to participate in losses and profits. Whether or not he did was optional with him. If he had elected not to do so, he would have "forfeited his right to share in the oil produced." It was his election to share the losses that entitled him to share the profits, and this was known by Donaldson when he accepted the assignment, and when he later went to California without notifying the Philadelphia Company of his interest in the lease, or Germer of his whereabouts.

[5] In mining and oil operations large expenses and great risks are necessarily incurred. No one can tell in advance what the result or expense will be. Oil or mineral in the ground has only a speculative value. It is therefore inequitable for one joint owner of oil or mineral in place (for the same principle applies to both) to refuse to participate in an enterprise, but wait until the other has assumed the expense and risk of success, and then demand his proportional share of the profits. The fact that a co-owner of oil in place does not know of the operation, or that he knows of it, but refuses to give his consent to the withdrawal of the oil, and notifies the party assuming the risk that he expects his proportional share of the profits, does not change the rule that he is not entitled to profits, but only to the customary royalty. Fulmer's Appeal, supra; South Penn Oil Co. v. Haught, 71 W. Va. 720, 78 S. E. 759; McIntosh v. Ropp, 233 Pa. 497, 82 A. 949.

In the case of Williamson v. Jones, 39 W. Va. 264, 19 S. E. 444, 25 L. R. A. 222, Judge Holt said: "I should think that a co-owner, who has expended so large a sum, entirely at his own risk, but with the knowledge of the other co-owners, in so hazardous an enterprise as developing oil in an unexplored field, ought not to do more than account to them for their proportion of a customary royalty, proper and fair under all the circumstances."

If Donaldson had been consulted as to his willingness to join in the enterprise, to assume the risk of losses, and to share profits, what he would have done is purely speculative. That he was not asked is, perhaps, as much his fault as that of any one else. The Philadelphia Company never knew of his interest, Germer had forgotten it, and he himself practically abandoned it; for he never recorded the assignment, stood by for 14 years, and never spoke of his interest to the Philadelphia Company, never saw or communicated with Germer, and departed from this section of country without leaving his address with him.

The royalty in West Virginia was stipulated as follows: "It was further admitted at the trial by the plaintiff that the uniform royalty in the oil fields of West Virginia, including the locality in which the leases in suit are located, is one-eighth of the oil." There is no evidence of intentional wrongdoing or bad faith on the part of anybody. The rule of law announced in the above cases in our opinion is applicable to the question raised here. The owner of the land was entitled to a royalty of one-eighth, leaving seven-eighths to the operators and owners of the lease. In these seven-eighths, Donaldson is entitled to his share in the customary royalty of one-eighth. His share, therefore, is one-sixth of one-eighth of seven-eighths, which is $\frac{7}{384}$.

The decree of the District Court is reversed, with directions to enter a decree in accordance with this opinion.